UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA

DARLA HARRIS-GLOWACKI,            )
                                  )
        Plaintiff,                )
                                  )
        v.                        )    CAUSE NO.: 3:15-CV-395-TLS
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
        Defendant.                )

                            **OPINION AND ORDER**

The Plaintiff, Darla Harris-Glowacki, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits (DIB). The Plaintiff claims that she would be unable to maintain substantial gainful employment due to limitations brought about by various physical and mental impairments.

                            **PROCEDURAL HISTORY**

In October 2012, the Plaintiff filed a claim for DIB, alleging disability beginning on March 15, 2012. The claim was denied initially, and upon reconsideration. The Plaintiff sought appeal of those determinations and filed a request for a hearing before an Administrative Law Judge (ALJ). In April 2014, the Plaintiff, who was represented by an attorney, appeared and testified at a hearing before the ALJ. A vocational expert (VE) also testified. On April 22, 2014, the ALJ issued a written decision, in which she concluded that the Plaintiff was not disabled because she was capable of performing unskilled sedentary work in such jobs as addresser, taper, paper printed circuit layout, surveillance monitor, and hand mounter. The Plaintiff sought review

of the ALJ's decision by the Appeals Council, which denied review. The Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

## THE ALJ'S FINDINGS

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also* 42 U.S.C. § 423(d)(1)(A) (defining a disability under the Social Security Act as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *id.* § 423(d)(2)(A) (requiring an applicant to show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy"). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so she moved to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments.

An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's severe impairments were obesity, fibromyalgia, right knee osteoarthritis and medial meniscus derangement, post-traumatic stress disorder, and depression. The ALJ also discussed some of the Plaintiff's other physical impairments, but determined that they were not severe.

At step three, the ALJ considered whether the Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's impairments did not meet Listing 12.04 for depressive, bipolar, and related disorders, or Listing 12.06 for anxiety and obsessive-compulsive disorders. She reasoned that the Plaintiff's restrictions in each of the "paragraph B" criteria were moderate, but not marked. Additionally, the record did not contain evidence that the Plaintiff had experienced any episodes of decompensation, which had been of extended duration.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to frequently lift twenty pounds and occasionally lift ten pounds,[1] and that she could stand or walk for two hours in an eight-hour day, as well as sit for six hours in an eight-hour day. Additionally, the Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, and crawl, but should never crawl or climb ladders, ropes, or scaffolds. The Plaintiff was to also avoid hazardous machinery and unprotected heights. To address the limitations caused by the Plaintiff's mental impairments, the ALJ concluded that she was limited to simple, routine and repetitive tasks and could respond appropriately to supervisors, co-workers, and the public only on an occasional basis.

---

[1] It is incongruent to say that a person can lift twenty pounds frequently if she can only lift ten pounds occasionally. Neither party has mentioned this typographical error, and it appears to not have had any impact on the sedentary jobs that were identified in the final step of the ALJ's analysis. The regulations define sedentary work as requiring primarily sitting, some walking and standing, and lifting no more than ten pounds at a time. *See* 20 C.F.R. § 404.1567(a).

In making these findings, the ALJ considered the Plaintiff's testimony regarding the symptoms caused by her impairments. The ALJ acknowledged that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, she did not find credible the Plaintiff's allegations related to her fibromyalgia and her PTSD and depression. With respect to the limitations caused by her physical impairments, the ALJ gave great weight to the opinion of the Plaintiff's treating specialist, and some weight to the state agency medical consultant's opinion. For the mental impairments, the ALJ considered the opinions of two treating specialists and three state agency specialists. The ALJ gave little weight to the opinions of the treating psychiatrist and treating psychologist, who had assigned severe functional limitations and opined that the Plaintiff was not capable of sustaining competitive work on a regular and continuing basis. The ALJ assigned more restrictions than those found by the psychological consultants, but fewer than those found by the consultative examiner, whose opinion the ALJ afforded little weight.

Although the Plaintiff could not perform her past relevant work as a hairstylist, at the final step of the evaluation, the ALJ determined that the Plaintiff could perform other work in unskilled sedentary occupations that existed in significant numbers in the national economy.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

The Plaintiff does not challenge any of the ALJ's conclusions regarding the impact of her

physical limitations. Her concern, and the basis for her claim of disability, centers around the limitations caused by her mental impairments. The record contains evidence that the Plaintiff suffers from at least moderate limitations in several areas of functioning. Other portions of the record, specifically the Plaintiff's own statements and the opinions of treating psychiatrist John Crayton and treating psychologist Tamara Miller, evidence more severe difficulty in these same areas. The ALJ gave more weight to the evidence that the Plaintiff suffered no more than moderate difficulties, which she accounted for by limiting the Plaintiff to simple, routine, and repetitive tasks and by finding that she could occasionally interact and respond to supervisors, co-workers, and the public.

The Plaintiff presents three issues for review. She argues that the ALJ's finding that she does not have an impairment that meets or medically equals the severity of a listed impairment is not supported by substantial evidence. She further claims that the ALJ failed to follow the social security regulations for evaluating medical opinion evidence. Third, the Plaintiff challenges the ALJ's credibility determination.

The ALJ offered the following analysis to support her conclusion that the Plaintiff's mental impairments of PTSD and depression did not, considered singly and in combination, meet or medically equal the criteria of Listings 12.04 and 12.06:

> In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has moderate restrictions. Initially, the claimant reported that she does light household chores, watches television, goes shopping, cooks simple meals, and completes her hygiene care every day (Exhibit 4E). The claimant testified that she warms up her breakfast, sews, does a few dishes, reads, and takes care of her hygiene, but she testified that she has days when she prefers to stay in bed and wears pajamas. Overall, the claimant appears to have moderate limitations in activities of daily living.

In social functioning, the claimant has moderate difficulties. The claimant initially reported that she goes shopping and run[s] errands twice a week and has no problems interacting with others in stores (Exhibit 4E). The claimant testified that she goes shopping with her husband, her daughters come over, and she had friends that visit, but she also testified that she does not like to go out on her own. On the whole, the undersigned finds that claimant has no more than moderate difficulties in social functioning.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. In December 2012 the claimant reported that she has no issues in completing tasks, is able to cook simple meals, and watches television (Exhibit 4E). At the hearing, the claimant alleged that she is unable to complete tasks, but the claimant was able to follow the hearing process and respond appropriately. Furthermore, throughout the record, the claimant is observed to have intact memory and attention (Exhibit 23F). In general, the claimant appears to have no more than moderate deficiencies in concentration, persistence, and pace.

(R. 65–66.)

The Plaintiff argues that the ALJ did not support her conclusions with any medical evidence. Arguably, if the ALJ had given Dr. Crayton's and Dr. Miller's opinions controlling weight, the Plaintiff's depression and PTSD might have been recognized as a listed impairment at Step 3 given the degree of limitations noted in areas of social functioning, and concentration, persistence, and pace. Accordingly, the overriding issue is whether the ALJ's assessment of these medical opinions should be sustained, so the Court will turn to those opinions.

With regarding to treating sources, the applicable regulations state:

Generally, [the ALJ] give[s] more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))—then the ALJ should move on to assessing the value of the opinion in the same way she would any other medical evidence. *See id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)-(ii), whether the physician supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "'minimally articulate[d]'" her reasons. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

In August 2013, Dr. Crayton, the Plaintiff's treating psychiatrist, completed a Medical Assessment of Ability to do Work-Related Activities. (Ex. 12F.) He opined that she had a fair ability— meaning that her ability to function was seriously limited, but not precluded—in the following areas related to job adjustments: follow work rules; relate to co-workers; deal with the public; use judgment; and interact with supervisors. He thought that she had no useful ability to

8

deal with work stress, function independently, or maintain attention and concentration. He based this on her chronic depression and anxiety. He opined that her mental impairments would preclude her from being reliable "over several days to weeks." (R. 566.) As to the Plaintiff's ability to make simple work-related decisions, respond appropriately to usual work situations, deal with changes in a routine work setting, and respond appropriately to supervisors and co-workers, all on a regular and continuing basis, Dr. Crayton assessed "extreme loss." (R. 566–67.) Dr. Crayton checked "yes" in response to the question whether the Plaintiff's mental symptoms could reasonably be expected to result in failure to complete tasks in a timely manner for one or more hours in an eight-hour day on a chronic basis. (R. 567.) He believed that the Plaintiff would have four absences per month, and was not capable of sustaining competitive work on a regular and continuing basis.

The ALJ recognized that Dr. Crayton was the Plaintiff's treating psychiatrist, but afforded his opinion "little weight since it is not consistent with his own treatment notes that consistently report that the claimant's memory, attention, and concentration are intact," and because "the record reflects that the claimant's condition improved shortly after this opinion was written." (R. 71, citing Ex. 23F.)

In February 2014, Dr. Miller, the Plaintiff's treating psychologist, completed the same Medical Assessment form that Dr. Crayton had provided. (Ex. 22F.) She assessed the Plaintiff with even greater limitations than those Dr. Crayton found. Her findings in support included the Plaintiff's "daily inability to maintain hygiene, frequent episodes of uncontrollable anxiety [and] tearfulness, [inability] to get out of bed, [reliance] on husband to cook/provide meals [and] to accompany her on activities outside of the home." (R. 783.) Dr. Miller believed that the

9

Plaintiff's symptoms related to depression and anxiety were severe and had "significantly diminished" the Plaintiff ability to concentrate and organize her thoughts, and negatively impacted her daily abilities. (R. 784.)

The ALJ thought that "Dr. Miller's extreme opinion [was] not consistent with the claimant's reports or the overall record." (R. 71.) The ALJ highlighted that the Plaintiff "planned a vacation to Florida, was able to attend the Blueberry Festival, went and got her haircut [sic], has friends and interacts with her children, and reads and sews." (*Id.*) The ALJ also pointed out that Dr. Agarwal, although not a mental health professional, had consistently noted the Plaintiff's normal mood and affect. The ALJ concluded that if the Plaintiff had the "total loss of functioning" reported by Dr. Miller, it "would have been observed by other medical professionals." (*Id.*)

The Government defends the ALJ's analysis of Dr. Crayton's opinion with a review of the treatment records:

> There were fourteen treatment records that addressed Plaintiff's mental functioning ([R]. 789, 794, 798, 800, 804, 806, 808, 810, 812, 814, 816, 818, 820, 822). Out of those records, two of them indicated that Plaintiff's memory and attention were "not tested" ([R]. 794) or that she had "trouble remembering" ([R]. 804). The remainder of the records noted that Plaintiff's memory, attention and concentration were either intact, "ok," good or "WNL [within normal limits]" ([R]. 789, 798, 800, 806, 808, 810, 812, 814, 816, 818, 820, 822). Since the vast majority of the records noted that Plaintiff's memory, attention and concentration were intact, it was not error for the ALJ to note this when discussing the opinion evidence ([R]. 71).

(Mem. in Supp. of the Comm'r's Decision 9–10, ECF No. 22.) Although it may not have been an error to cite to Dr. Crayton's treatment notes in this way, the ALJ does not explain why Dr. Crayton's other assessments, such as those relating to the Plaintiff's social functioning, were not entitled to controlling weight. Concentration, persistence, and pace was just one of several

10

functional areas addressed in his opinion. Moreover, a progress note referring to the level of memory, attention, and concentration exhibited *during an office visit* is not the same as whether the Plaintiff has any useful ability to maintain attention and concentration *in a work setting*, which is what the Medical Assessment asked. The treatment record notes are snapshots, the assessment was intended to elicit Dr. Crayton's opinion based on a longitudinal view. The inconsistency between the August 2013 opinion and the treatment notes is not as apparent as the ALJ's decision implies. Accordingly, it is not substantial evidence in support of the ALJ conclusion.

The ALJ's statement that the Plaintiff's condition improved shortly after the August 2013 report is followed by a citation to Exhibit 23F, which contains Dr. Crayton's and Dr. Miller's treatment records. In a section of the ALJ's decision dedicated to discussing whether the Plaintiff's allegations regarding the symptoms of her PTSD and depression were credible, the ALJ referred more specifically to portions of these treatment records:

> The claimant's low point appears to have been in August 2013 when the claimant was upset that Dr. Agarwal's nurse told the claimant she was not disabled (Exhibit 23F). At that time, Dr. Crayton assessed a GAF score of 45 (Exhibit 23F). Two weeks later, on September 4, 2013, the claimant was much improved and she reported that she had enjoyed herself at the Blueberry Festival (Exhibit 23F). Dr. Crayton continued to note that the claimant was more relaxed, was in a good mood, and had intact memory and attention on October 7, 2013 (Exhibit 12F). At the claimant's next visit on October 28, 2013, she was very upset about her visit to Dr. Agarwal's office, but she also reported that she had arranged a nice honeymoon in Florida for February (Exhibit 23F).

(R. 69.)

The ALJ does not explain the significance of the Florida trip as it relates to Dr. Crayton's or Dr. Miller's opinion. This is problematic because the record does not indicate what the Plaintiff did during her time in Florida. It cannot just be assumed that she functioned during her

11

vacation in a manner that would be appropriate or necessary to maintain full-time employment. Indeed, the ALJ's decision acknowledges the fact that "Dr. Miller noted that the claimant was doing poorly with increased symptoms before and after the claimant's honeymoon trip to Florida." (R. 70.) Dr. Miller was aware of the Plaintiff's vacation, yet she concluded that the Plaintiff's ability to function in a work setting was severely compromised. Given the difference between the environments of each, this is not evidence that her opinion was inconsistent with the record.

The ability to maintain some friendships and to interact with her adult children when they came to her house does not undermine the Plaintiff's claims that she does not go out in public alone, or conflict with Dr. Miller's statements about the Plaintiff's inability to relate to people in a work environment or behave in an emotionally stable manner. The ALJ also mentioned the Plaintiff's activities of reading and sewing, which the ALJ presumably thought meant that she could maintain greater attention and concentration than Dr. Miller indicated. However, there is no indication of the pace at which she undertook these activities. She certainly was not held to "a minimum standard of performance, as she would be by an employer." *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (describing "critical differences between activities of daily living and activities in a full-time job"). Moreover, the reference to treatment notes citing improved mood and increased GAF scores fails to take into account that "[m]any mental illnesses are characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms." *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) (first citing *Spiva v. Astrue*, 628 F.3d 346, 351–52 (7th Cir. 2010); and then citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); and then citing *Bauer v. Astrue*, 532 F.3d 606, 609

(7th Cir. 2008); and then citing *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006)).

Another reason the ALJ cited for not giving controlling weight to Dr. Miller's opinion was that if the Plaintiff had the "total loss of functioning" reported by Dr. Miller, it "would have been observed by other medical professionals." (R. 71.) First, to state that Dr. Miller opined that the Plaintiff had a "total loss of functioning" is an overstatement. Dr. Miller was asked to assess the Plaintiff's ability to make occupational adjustments, make performance adjustments, make personal-social adjustments, and sustain basic work-related activities. Second, similar observations had indeed been made—by the Plaintiff's treating psychiatrist, Dr. Crayton. Additionally, a state agency consultant, Dr. Nancy Link, opined on December 19, 2012, that the Plaintiff was considered to be moderately to severely impaired in terms of work related activities in respect to her overall signs and symptoms of anxiety and depression. (Ex. 7F.)[2] The records from Dr. Agarwal (Ex. 21F), the Plaintiff's primary care physician, do not purport to comment on the Plaintiff's ability to make occupational adjustments, make performance adjustments, make personal-social adjustments, and sustain basic work-related activities.

Even if the ALJ had articulated good reasons for rejecting Dr. Miller's opinion, it still would have been necessary to determine what weight her opinion was due under the applicable regulations. *See Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). As stated earlier, the relevant factors include the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue. The ALJ did not do this

---

[2] The ALJ afforded the opinion "little weight" because "it was not consistent with Dr. Link's own examination and appeared to be based upon the claimant's subjective reports of symptoms." (R. 71.)

with respect to Dr. Miller's opinion. The Court does not find substantial evidence in the record in support of the ALJ's assessment of the medical opinions from the Plaintiff's treating sources.

The Plaintiff also challenges the ALJ's assessment of her credibility. The only testimony regarding the Plaintiff's mental functioning that is noted in the ALJ's decision is her testimony that she has panic attacks if she drives alone, and that she sleeps for long periods of time and does not do much on her own. The ALJ thought it significant that, despite an alleged onset date of March 15, 2012, the Plaintiff did not seek mental health treatment until August 27, 2012, when she was evaluated by Dr. Crayton. However, as the Plaintiff notes, she had already been diagnosed with depression and was taking prescription medications. The ALJ also provided an overview of the treatment notes and the medical opinions when addressing the Plaintiff's credibility regarding her symptoms. However, in light of the issues noted above, the Court does not think that an accurate and logical bridge has been built between the evidence, particularly the treatment notes and the medical opinions, and the conclusion that the Plaintiff's allegations were only partially credible.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

SO ORDERED on February 15, 2017.

                 s/ Theresa L. Springmann
                CHIEF JUDGE THERESA L. SPRINGMANN
                UNITED STATES DISTRICT COURT